Thank you. Thank you. Good morning. I'm Scott Smith of the Odell-Williams Law Firm here in Seattle, and I'm representing Legal Voice, which was formerly known as the Northwest Women's Law Center. I'd like to say that I can have three minutes for rebuttal. The outcome of this appeal is as simple as determining the meaning of the word must. The district court had a mandatory duty to protect the law center, a non-party, from the plaintiff's unduly burdensome and expensive discovery demands. Counsel, we have a question to discuss first, which is whether we have jurisdiction over your appeal. And the orders denying the costs under Rule 45 were filed in 2009, final judgment in 2012, and you appealed in 2012. Why wasn't there an appeal in 2009, because your part was over at that point? Well, we actually didn't know that it was over. The discovery had taken place over the course of several months. The particular discovery dispute regarding the subpoenas took three different court orders. There was another motion regarding a motion to compel a staff attorney at the law center to appear for a second deposition. As far as we knew, the discovery disputes might go on up until trial. The reason we did not appeal earlier is we were not required to appeal. I think it's important to note that the general rule is the final judgment rule. It is a rare exception when a party files an appeal or is permitted to file an appeal before the case is completed. Under the collateral order doctrine, it's considered a fairly narrow exception to that final judgment rule. But you could have appealed in 2009 under the Columbia Broadcasting System case. I believe we could have, although we've got two different orders. I believe we could have at that time. But the Columbia case does not stand for the proposition that you must appeal earlier. It simply entertained a request by that party to consider an early appeal. The norm is to wait until the end of the case and then file an appeal. There are a lot of cases involving sanctions, awards of attorney's fees and the like. And whether they involve parties or non-parties, the typical rule is that you wait until the end of the case and then you file the appeal. So what we did was the normal procedure of waiting until the case was over. Can you cite any Ninth Circuit case that, you know, permitted an appeal of this kind of order by a third party at the time of the entry of final judgment? Well, I would point to the fact that the plaintiffs cannot point to a single case in which an appeal was dismissed when the party waited until the end of the case. I don't have one. There are no cases either way. There really aren't. There really aren't. I didn't find any. No, we didn't either. And the collateral order doctrine is a judicial creation. You've got Rule 54B, which has a specific rule relating to certification for proceeding with an appeal, but the collateral order doctrine is an attempt by the court to decide what are the rare cases in which we're going to allow a party to file an early appeal. Courts obviously don't like doing it. They want to give an opportunity to give the parties a chance to be heard on appeal, but they prefer to wait until the end of the case. And there's a lot of efficiency and logic in doing that. The efficiency comes about because, again, if the plaintiff's argument were correct, we would have had to file a series of three different appeals during a four-month stretch over spanning a two-year period. Does the record, or at least the district court docket, reflect that statement you said earlier that the discovery dispute between your client and the plaintiff's was ongoing after the entry of the third order? We fear there will be additional discovery issues because they really would not relent in their demands to get internal documentation. I mean, did you go to court on additional issues? No. The third order was the last time we were before the court on the discovery disputes. That involved both the request for reimbursement for costs, and it also involved a fight over whether or not the staff attorney at the law center had to appear for a second deposition. But your position then was, at that time, there's no way you could have known that was the last time you'd go to court. No. In fact, given how aggressive they were, we expected that this was going to go on and on. They sought and obtained permission from the court to take a number of depositions beyond the normal discovery limitations. Again, the fight being motivated more by ideological reasons than actually getting information useful for the court, we figured, as long as the judge wasn't reining them in, why stop? But in fact, the third order was the last one. But again, when the court fashions the collateral order rule, they look at what makes sense. And again, it's unusual and it's rare, but it's sometimes permitted. A party can appeal early, but they're not required to appeal earlier. I think that's significant as well, Judge Tashima, that they have no cases saying you must file an appeal earlier if it happens to fall in that category of a collateral order. One of the efficiencies is rather than us having filed a series of three appeals, we would have filed, which we have done, one appeal of the court's orders. The other benefit of waiting until the end of the case is call it a cooling off period. I mean, parties sometimes decide a year down the road, you know, it's really not worth it, we've moved on. That may be one reason why there's relatively few appeals by non-parties of discovery orders like this. Well, now that you haven't cooled off, maybe you'll tell us about the merits for a couple of minutes. All right. As to the merits, I think the panel has read the underlying briefs. It was a pretty highly charged appeal involving constitutional challenges and pharmacy board regulations. The plaintiffs did good battle in the legislative arena. When they lost, they turned to the courts. But in the course of the lawsuit, they turned their gun sights on a number of other public interest organizations like the Northwest Women's Law Center who had vigorously participated in the public debate. And the demands, discovery demands are truly over the top. I mean, it wasn't just we'd like to see your communications with the state actors, but we want to list your board members going back 20 years and all your volunteers and employees, we want your attorney client documents. And to my disappointment, the court did not quash the subpoena and then this abuse at that point, but instead required the law center to produce so many documents that took them hundreds of hours, hundreds and hundreds of hours. Plus, they had to hire a temporary paralegal to work full time for two weeks to meet the production deadline. And the information requested wasn't needed. The state had produced 23,000 pages of documents detailing its communications with these public advocacy groups. So if you consider who were the plaintiffs targeting, again, it was the adversaries in the public debate, the nature of the documents being demanded, and the blatant offensiveness of some of the deposition questions, what you had here was not legitimate discovery, but an abuse of the discovery process designed primarily to chill the First Amendment rights of participants in the public arena who took a contrary view. Can the law center quantify the cost it incurred after the plaintiffs filed their second motion to compel? Yeah, they kept detailed time records, and I've certainly got my time records. As this evolved, the first effort was to narrow the subpoena. It was narrow, but it was still pretty burdensome. But they've got detailed records to be able to do that. So if the court does reverse and remand, we'll then provide that evidence to the court and present that. But the two rules before the court were pretty straightforward, and both are mandatory. When amended in 1991, the rules were designed in part to protect non-parties from this very situation. So the first mandatory duty that the district court did not follow was to impose sanctions because the discovery was not appropriate, and they did not take reasonable steps to avoid imposing, quote, an undue burden or expense on the non-party. And the courts are also supposed to be particularly sensitive when First Amendment issues are at stake. And the second cost-shifting rule, it's not a sanction, as is the first, but it's also a mandatory requirement that if you impose a discovery burden on a non-party and the expenses are substantial, the propounding party has to pay for that. Are those two, I guess, separate forms of relief you asked for somewhat overlapping? Well, they are overlapping because they're... In other words, let's say, hypothetically speaking, you get your costs, right, under the mandatory position. Then wouldn't that cover what you asked for as sanctions under the other provision? I think it would largely overlap because the courts have addressed this and said costs do include attorney's fees and complying. And we had to, you know, do call for privilege, and we had several discovery motions. But it would be up to the district court, I guess, to separate that out and make a finding. Yeah, the district court would need to make findings on the specific amount as to what both cost-shifting would be and then whether the court wants to impose on top of that a sanction. We provided fairly detailed evidence that, in fact, there had been a pretty significant expense imposed on the law center to comply. And just like, you know, witness fees, it's neutral. We're not trying to punish somebody, but if you want to have somebody show up in court, you have to pay their witness fee and mileage. And so that's what Rule 45 does following this particular amendment. So we would ask that the court reverse and remand to the district court to determine what the cost should be just from a reimbursement standpoint and also order the district court to impose a sanction because under the evidence presented, there very clearly was an abuse of the discovery process and a deliberate attempt not to cooperate and be reasonable, but to impose an undue burden and expense on the non-party here. Counsel, you've exceeded your time, but we'll give you a minute for rebuttal when the time comes. Thank you. Good morning, Your Honor. Police, the court. My name is Steve Obana. I represent Storman's family in this matter and the two pharmacists who are all present today, Ms. Thielen and Ms. Hustler. I want to address first this issue of the threshold question of whether this court has jurisdiction over this matter. This court has said on a number of occasions that a collateral order, particularly one that deals with the denial of production costs, conclusively determines the disputed question and resolves the issue completely separate from the merits of the underlying litigation. It's black letter law in this circuit. It's black letter law. Well, there's also black letter law in Rivero and some other cases that say, just because you can take an earlier collateral or interlocutory appeal, you don't have to. That applies to parties, Your Honor, not to non-parties. What's your best case that says a non-party is not permitted to await a final judgment? I've got two best cases, Your Honor. Okay. One is SEC versus Capital Consultants, where this court stated that black letter law, the time for appeal of an appealable collateral order begins to run on the date the court enters the order. Thus, the parties who do not realize that an order may be an appealable collateral order before the time for appeal runs out will lose their opportunity to appeal. That's precisely what happened here today. What case is that? I'm sorry. I'm sorry. That's SEC versus Capital Consultants, and that was from 1173 that I read. So, it doesn't happen where we have a situation like this where a non-party tries to bootstrap onto the final judgment because those non-parties understand that all issues have been resolved as to denial of their production costs, and that's the time under Rule FRAP 4, FRAP 3. Can I ask you a question about Capital Consultants, though? It seemed to me that the analysis there relied heavily on the fact that it was a receivership case and that it's sometimes harder to tell in that context. Is that case sort of an across-the-board requirement in your view, that as soon as there's a non-party order that's appealable, that's the only time you can appeal it, even if it's not in a receivership context? Yeah, I think we turn to Columbia, of course, which is in many respects on all fours here where it's a denial of production costs to a non-party, and this court said in that case that the plaintiff, or excuse me, the non-party timely filed its appeal. Right. Columbia, though, says, Columbia Broadcasting says the party could appeal. It didn't say that it had to on pain of losing its opportunity from the final judgment. It didn't get to that point. It just said it could. It didn't say it had to. At least that's not how I read it. I think the problem the court has, though, is what is the basis under FRAP 3 and FRAP 4 for permitting basically a non-party that has a final conclusive order two bites at the apple? Do they really have, can they really say that their order merges? But your theory would have required them to have three bites at the apple because there were three separate orders, so they would have had to file three appeals, and if this dispute had continued, perhaps four, five, six, or seven appeals to deal with each of the orders, and that strikes me as sort of the opposite of the reason for interlocutory or collateral appeals, which is judicial efficiency to deal with an issue that shouldn't have to await final judgment. But it is the fallback rule that everybody gets to appeal at the time of final judgment, and given the inefficiencies in this type of situation of requiring piecemeal, several appeals, and waiting for the final judgment, why shouldn't we allow at least the fallback rule to apply? Well, again, I think the fallback rule only applies, Your Honor, when you're dealing with parties, because in that situation, the party may have a number of interlocutory orders that after trial, after the matter is resolved, then at the clear light of day, it can decide whether it wants to appeal the judgment. Well, in this case, there were a number of orders. There were three interlocutory orders, right? There were, and. Do they have to appeal each one separately? In this case, it doesn't really present that issue, because the non-party here, Legal Voice and Planned Parenthood, they asked for pre-production costs. The court then, at that same hearing, narrowed the scope of that discovery, and the court and the party said, we'll come back to you and renew our request, actually when we get the post-production costs. That's what they did in March of 2009, is they said, okay, here are our actual production costs in light of your narrowing of the subpoena, and that's when they brought forward this reduced number of $20,000, which was based upon a conclusory statement by their director. There was no backup. There was no substantiation for that number. That was the final order that they were awaiting for their production costs to be determined, and then they told the court, we're going to bring those production costs to you in light of your narrowing of that subpoena. And so, if the district court had instead imposed awarded costs and sanctions, and imposed sanctions on the plaintiffs, when would the plaintiffs have had to appeal that order? What's the time frame they would have had? That would have been a final order as to the issue of costs that was not linked to the underlying litigation, and the plaintiffs would have had 30 days. Well, what rule says that the plaintiffs have to appeal at that time? I think the idea... The usual rule is that any party, the plaintiff's party, can appeal from a final judgment, and when you appeal from the final judgment, you can raise, you know, an objection as to any order made during the course of the proceeding, right? That may be. That may be. Why can't you wait to the end of the, you know, until final judgment to appeal that hypothetical ruling, assessing costs against you? I think probably in that case, the plaintiff does have two bites at the apple, but we're in different positions. Hill, I think it's Hill versus McMillan, held that an order directing a party to pay sanctions to the other party's lawyer could only be appealed after judgment. And so, I'm trying to figure out if that extends to this situation, and if you had lost on this issue in the district court, would you have had to wait until final judgment? And then, I guess my final question is, if that's the case, does it really make sense to have a different timeframe for non-parties? I think it does, because the axiom here is that the non-party is a stranger to the underlying litigation and does not participate in the ultimate judgment. So, it has a different rule. It has a different set of standards for when it has a final decision that is mature and needs to be appealed, and that's what this court has said in the Newton case, that the non-parties are a stranger to that judgment. And in the Kibble-Dick U.S. Supreme Court case, that's also consistent with that position. I would like to turn to the merits, if I may, Your Honor. And that is, it's really impossible to understand the importance of these documents that we were trying to obtain from the law center if you don't understand their integral and unusual role in this process. The law center was appointed by the governor to draft the regulations. They were appointed by the governor to a task force to negotiate exemptions that would allow referrals for all but religious reasons. They were involved in creating and, in some cases, manufacturing so-called refusal stories. And then, the governor gave them the unusual opportunity to actually interview and help select board members to the Board of Pharmacy before they passed on the regulations. Their role was directly involved in the draft. But addressing, you know, the last form of relief they want, in other words, their costs under 45C2B2, it doesn't matter how important the documents are. You assume they're important. But the question is, did it impose an expense on the third party, and was that expense significant? It has nothing to do with how important the documents are, right? Right. Turning to that part of their request, their request for the production costs that were significant, in the sound discretion of the trial court, it determined that after it narrowed the scope, Your Honor, it said, the scope of production has been sufficiently limited by the court such that the cost of producing said documents should not be overly burdensome. So, the court made that determination. That's not the test, overly burdensome. The test is, is it significant? And I think the court was essentially saying the same thing. They were requesting. Saying the same thing? I think that's what the court was getting at, was the court has felt that. The reason I say that, you know, not facetiously, but because, you know, other parts of the discovery rule, like 37, they talk about overly burdensome. So, obviously, in this provision, they use the different words, whether it's significant, and presumably has a different meaning than overly burdensome. Well, we know their costs were significantly reduced, Your Honor, at the outset. That didn't mean they weren't still significant. I mean, if you have a million dollars reduced to 500,000, that's a huge reduction. I mean, a 50% off sale is a good sale. But a half a million dollars would still be significant. So, the question is whether the $20,000 or whatever it turned out to be is significant within the meaning of Rule 45. Well, the court can look at several factors to develop significance. Like in the Exxon Valdez case, which is a post-1991 amendment case. The court looked at, does the non-party have an interest in the outcome of litigation in determining significance? Is it a matter of public interest? Can it bear the cost of production? Those are factors that are in the sound judgment of the Trump Court. Okay. Well, the word significant comes with the word expense. So, what we're looking at is not significant in public interest. We're looking at whether this non-party incurred a significant expense as a result of compliance, and it is a non-profit. So, why wouldn't this expense be significant? Part of the problem was their showing of a significant expense. And this was in March of 2009. At that point, after everything had been reduced, they said in the conclusory statement, we have 400 hours that I estimate, this is the director, that I estimate is $20,000. They don't provide a single timesheet. They don't break down the hours of the different staff people. The court did not. That sounds like something that would maybe benefit from a hearing or from cross-examination or from counter-affidavits, but I'm not sure why that means that, as a matter of law, they're not entitled to their expense. I think it's because, Ron, at that point, they had the burden of showing that they had a significant expense, and all they provided at that stage was a conclusory statement without any backup or support. Well, it is, on personal knowledge, a statement of how many hours were spent. Why isn't that backup in and of itself? Well, I think. Ordinarily, don't we say, if someone says, we spent so many hours. If you put in an affidavit that said, I spent 400 hours on this litigation, we would believe you. And, you know, so I'm not sure why it's insufficient, so insufficient that it doesn't result in any recovery of expenses. I think in the context of the attorney, I've always had to provide worksheets and an explanation of the time given and more of an explanation. That's not what the court asked for. The court just said no without saying, gee, well, yeah, it looks significant, but I need more detail. Again, I think I'd go back to the burden was really on Legal Voice at that point to proffer that sufficient support for their application. And all they, she said was, I estimate, twice, I estimate that we spent 400 hours among several employees, and that was $20,000. She certainly could have broken that down in a much more clear and detailed way, but didn't bother to do so. And that certainly was, could have been one reason why the court denied the application at that point. But I think it's also important to realize that we're dealing here with a non-party, and frankly, it was nominal non-party in many respects because it was so engaged. Well, it was either a non-party or it was a party. I mean, on the one hand, you're saying there's, they had to file their appeal because they're a non-party. They're a total stranger to litigation. Now you're saying, well, we get to burden them with all this discovery because they're kind of like a party. I mean, you can't really have it both ways, it seems to me. Well, I'm thinking of the Exxon Valdez case that was a post-1991 case. And of course, the court looked at the non-party, which was an industry group of the oil industry that was propounded discovery by one of the, by the plaintiffs. And the court looked and said, and that said, we're going to look at whether that industry group has an interest in the outcome, whether they financially can bear those costs, whether this is a matter of public import. That was, those were all factors the court considered in that case as to whether it would award, whether it would decide there were significant costs in that situation. The court, in our case, had that same discretion to decide. Made no explanation. Right. Other than to deny the request at that point. But the court was intimately familiar with the discovery issues and the types of documents that were being produced over the course of this discovery. So it certainly had that information before it. And had the opportunity of seeing that earlier on when they made their pre-production request for fees of $100,000, they did provide detail. They did provide worksheets and other backup information. But when it came time after production, after the subpoenas had been significantly narrowed, they provided this conclusory statement without backup. And I think the court was in its discretion to decide they had not carried the burden and they were not entitled to cost. Thank you, counsel. Thank you. You may have two minutes for rebuttal. We allow Mr. O'Ban to argue longer. So you get a couple minutes, too. I'd like to mention one case which didn't find its way into the brief. But it's a case where a non-party, here is a lawyer who is not a counsel or party in the case with sanction. And the issue is whether he had to wait. And the court said, sure, he's got to wait. Just like a party in the case, they have to wait. That's Starcher v. Correctional Medical Systems. It's a Sixth Circuit case at 144, Fed 3rd, 418. Would you please provide a formal citation after we're done here and leave it with the deputy clerk and with opposing counsel and with the court? I think the court's familiar. There are other cases in which the default rule is wait. Please wait. At the end of the case, everybody will have a day in court. We can decide whether to proceed with these issues or not. If the court were to hold otherwise, then there's a new rule that you've got to appeal collateral orders immediately or within the 30 days of when they're issued. There's so much uncertainty in this developing area of law. There's still Supreme Court decisions on what is and isn't a collateral order, what must and must not wait. You're going to find that parties and non-parties who start appealing things that they would otherwise believe they could have waited until the end of the case to appeal. That is completely contrary to the final judgment rule's goal of increasing judicial efficiency. There's also no logic if you've got two sets of rules where, for example, if the district court here had imposed some sanctions that the plaintiffs were upset with and the law center thought were insufficient or had shifted some of the costs but not all and both parties were aggrieved, under the rule they're proposing, the logic would be we would have to appeal immediately, but they'd have to wait until the end of the case. Again, that makes no sense either. As for the underlying decisions the court made, the protections in Rule 45C are simple, they're fair, and they're very logical. And one of the key goals, which is not met in this case, was to deter excessive or abusive discovery, and I can assure you, I just know this, that if the financial burden imposed upon the law center and the other half dozen public interest groups had to be borne by the plaintiffs and their lawyers, either as sanctions or as cost shifting, I can assure you that they would not have gone to the trouble of demanding so much information that was ultimately worthless. What is your response to your opponent's statement that, well, your claim, cost claim was just highly conclusory, consists only of estimates, no kind of breakdown at all? I think that's wishful thinking. If the court looks at the declarations we submitted, you'll see a lot of detail. And as the court noted, the judge says, I'm not going to do it. I'm not going to do it. I'm not interested. And so he was not going to follow the mandate in Rule 45 to impose any costs at all. But when you've got a declaration under oath by the executive director saying, we've spent an estimated 400 hours working on this. That's the point. We hired a paralegal. That's his point. It's only an estimate. Well. There are no timesheets or, you know, like lawyers keep timesheets. Well, there's a declarative statement that they hired a part-time paralegal working full-time, 40 hours a week for two weeks to do it. Judge, I think if you look at the declarations, you'll be satisfied that there was significant credible evidence that this was a very substantial burden. That was their goal. We would ask that sanctions be imposed and that the costs of production be shifted to them on remand. Thank you. Thank you, counsel. We appreciate the arguments of both counsel in this very challenging case. The case is submitted and we will stand adjourned for this morning's session.
judges: Tashima, Graber, Murguia